**Judy Danelle Snyder, OSB No. 732834**
E-mail: judy@jdsnyder.com
**Holly Lloyd, OSB No. 942979**
E-mail: holly@jdsnyder.com
LAW OFFICES OF JUDY SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 228-5027
Facsimile: (503) 241-2249

    Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LYNN JONES,<br><br>    Plaintiff,<br><br>v.<br><br>GEORGE FOX UNIVERSITY, a domestic nonprofit corporation,<br><br>    Defendant. | Case No. 3:19-cv-00005-IM<br><br>PLAINTIFF'S TRIAL MEMORANDUM |

### I.    INTRODUCTION

    Plaintiff Lynn Jones filed this action against George Fox University for retaliation and discrimination in violation of the Rehabilitation Act of 1973, breach of contract, and breach of the duty of good faith and fair dealing. George Fox University filed a Motion for Partial Summary Judgment against Ms. Jones' claims for breach of contract and breach of the duty of good faith and fair dealing. On April 14, 2021, this court granted summary judgment on the breach of contract claim, but denied summary judgment on the claim for breach of the duty of good faith and fair dealing. (ECF 37). Trial is scheduled to commence on October 18, 2021, before the Honorable Karin J. Immergut.

PAGE 1 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

## II. FACTUAL BACKGROUND

The factual background of this case has been identified in the Joint Proposed Pretrial Order, lodged with the court on August 19, 2021, and will not be repeated here. The facts in this case are largely undisputed and cover a relatively short time period, between December 1, 2017 and May 14, 2018. To provide for the efficient presentation of the evidence, the parties jointly propose that a written copy of the stipulated facts, which have been filed separately, be provided to each juror at the outset of the case for reference throughout the case.

## III. MS. JONES' CLAIMS

### A. Rehabilitation Act Discrimination

Ms. Jones asserts two claims under the Rehabilitation Act for retaliation and for unlawful discrimination. Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a) (2020). The term "program or activity" means all of the operations of a college, university or other postsecondary institution, or a public system of higher education." 29 U.S.C. § 794(b)(2)(A). The implementing regulations for Section 504 provide that a university that receives federal funding "may not, on the basis of handicap, exclude any qualified handicapped student from any course, course of study, or other part of its education program or activity." 45 C.F.R. § 84.43(b).

#### 1. Retaliation Claim

Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964 by providing that:

> The remedies, procedures, and rights set forth in title VI of the Civil
> Rights Act of 1964 ... shall be available to any person aggrieved by
> any act or failure to act by any recipient of Federal assistance....

29 U.S.C. § 794a(2). The anti-retaliation provision of Title VI of the Civil Rights Act incorporated by section 504 states:

PAGE 2 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, *or because he has made a complaint*, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e) (emphasis added). This regulation applies to all rights secured by the Rehabilitation Act pursuant to 34 C.F.R. § 104.61. In other words, the anti-retaliation provision in Title VI of the Civil Rights Act has been incorporated by the Rehabilitation Act so as to extend the Rehabilitation Act's protections to " 'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with[protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act." *Barker v. Riverside Cty. Office of Educ.*, 584 F3d 821, 825 (9th Cir 2009), citing *Weber v. Cranston School Comm.*, 212 F.3d 41, 48 (1st Cir.2000) (granting standing under section 504 of the Rehabilitation Act to a mother who claimed the school system had retaliated against her personally for attempting to enforce her disabled child's rights)).

  To prevail on her retaliation claim, Ms. Jones must prove that she participated in an activity protected under federal law, George Fox University subjected her to an adverse action; and she was subjected to the adverse action because of her disability discrimination complaint. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act"); *Breyer v. Pac. Univ.*, 3:17-CV-00036-AC, 2020 WL 1161434, at *35 (D Or Mar 10, 2020); *T.B. ex rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015) (applying Title VII retaliation framework to the ADA); *see also Castle v. Eurofresh, Inc.,* 731 F.3d 901, 908 (9th Cir. 2013) ("The Rehabilitation Act is materially identical to and the model for the ADA ...").

  There is no dispute that Ms. Jones filed a discrimination complaint, (see Joint Proposed PTO, Agreed Fact 12 (ECF 45)), or that Ms. Jones' progress in the Clinical Mental Health Counseling program was halted during the third year of her program when she was ready to enter her internship year, (*Id.*, Agreed Facts 18 and 19). The jury will be asked to determine whether Ms. Jones was denied participation in her internship and required to complete a Remediation Plan

PAGE 3 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

before she could reapply for internship because of her discrimination complaint.

To establish a claim for damages under the Rehabilitation Act, Ms. Jones must prove that George Fox University intended to discriminate on the basis of her disability. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001); see also *Walker v. City of Pocatello*, 4:15-CV-00498-BLW, 2020 WL 4043487, at *3 (D. Idaho July 16, 2020) ("To succeed on a retaliation claim, a plaintiff must show that the defendant intentionally took an adverse action because of the plaintiff's exercise of a protected right. This conclusion is not only supported by the holding in *Ferguson [v. City of Phoenix,* 157 F.3d 668 (9th Cir. 1998)], but is consistent with the very nature of a retaliation claim. Such a claim requires a showing of an intentional violation. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005) ("Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment."[1]). In *Ferguson*, the Ninth Circuit held that compensatory damages were not available under Title II of the ADA or § 504, absent a showing of discriminatory intent. 157 F.3d at 674.

If Ms. Jones proves her retaliation claim, she is entitled to seek compensatory damages, attorneys fees and costs.

### 2. Discrimination Claim

Ms. Jones asserts that George Fox University discriminated against her due to her disability by denying her the opportunity to participate in the practicum/internship for 2018-2019, by questioning her mental fitness and psychiatric stability, by requiring her to complete a Remediation

---

[1]Title VI served as the model for Title IX, the Age Discrimination Act, and the Rehabilitation Act, so we interpret the four statutes similarly. *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F3d 945, 953 (9th Cir 2020) (internal citations omitted). See also, *Gutierrez v. State of Wash., Dep't of Soc. & Health Servs.*, CV-04-3004-RHW, 2005 WL 2346956, at *5 (ED Wash Sept 26, 2005)("The language of Title IX was patterned after that in Title VI, and the Supreme Court has interpreted the two consistently. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694-99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (reasoning that a finding based on the statutory language of Title VI should logically extend to Title IX). Therefore, the holding in *Jackson* based on Title IX applies to claims under Title VI as well.").

PAGE 4 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

Plan which required a psychological assessment to determine whether she was impaired and which did not provide Ms. Jones' with measurable outcomes for success, and by creating barriers which prevented her from obtaining her clinical masters degree. To prevail on her disability discrimination claim and receive compensatory damages, Ms. Jones must prove:

1. She is disabled under the Act;

2. She is otherwise qualified to remain in the program with or without accommodation;

3. She was excluded from the participation in or denied the benefits of the program solely because of her disability;

4. The program receives federal funding; and

5. The program intentionally discriminated against by acting with deliberate indifference.

*Zukle,* 166 F.3d at 1045; *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001); *Bryer*, 2020 WL 1161434, at *19. There is no dispute that Ms. Jones is disabled or that George Fox University receives federal funding. (ECF 45, Agreed Facts 2, 5). At issue is whether Ms. Jones is "otherwise qualified" for the program, whether she was excluded or denied the benefits of the clinical mental health counseling program solely because of her disability, and whether George Fox intentionally discriminated against her or was deliberately indifferent to such discrimination.

### a. "Otherwise Qualified"

"Otherwise qualified" means an individual who, although disabled, "meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity. *Zukle*, 166 F.3d at 1046; *Sandie v. George Fox Univ.*, 3:18-CV-01339-AC, 2021 WL 1214792, at *13 (D Or Mar 11, 2021), *report and recomm. adopted,* 3:18-CV-01339-AC, 2021 WL 1206578 (D Or Mar 30, 2021); *Hogan v. Odgen*, CV-06-5078-EFS, 2008 WL 2954245, at *7 (ED Wash July 30, 2008). Ms. Jones will adduce evidence that demonstrates that although disabled, she was "otherwise qualified" for the Clinical Mental Health Counseling program, including that she was meeting the academic standards of the program, her application for internship had been approved, and she obtained an internship with Polk County.

PAGE 5 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

Ms. Jones anticipates that George Fox will assert that she was not qualified for internship for the reasons identified in the February 23 and May 14, 2018 Remediation Plans, *i.e.*, she was not displaying minimum performance of the skills and dispositions prerequisite to entering the clinical practicum/internship year. (See Exhibit 56 p. 1). The jury should decide whether Ms. Jones was "otherwise qualified." George Fox is not entitled to deference for its decision, as addressed more fully below at pages 12 through 15.

### b. George Fox intentionally discriminated against Ms. Jones

Discriminatory intent under the Rehabilitation Act may be demonstrated by deliberate indifference. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Duvall*, 260 F.3d at 1138-39. Ms. Jones will adduce evidence that George Fox knew of its obligation to not discriminate against Ms. Jones due to her disabilities, and that it failed to act upon that likelihood.

George Fox's Handbook provides:

> George Fox University is committed to providing equality of opportunity and meaningful access for qualified students with physical, psychological, attentional or learning-based disabilities in compliance with the Americans with Disabilities Act (ADA) of 1990 and Section 504 of the Rehabilitation Act of 1973. A qualified student with a disability at George Fox University is someone who, with reasonable or no academic adjustments or modifications, is capable of meeting George Fox's academic standards....

(Exhibit 2, pp. 9-10). George Fox's Graduate/DPS Student Life Policy regarding Discrimination and Harassment provides, "Harassment or discrimination due to * * * physical or mental disability, * * * or any other status protected under applicable local, state, or federal law; or any distinguishing characteristic protected by applicable non-discrimination law, is prohibited." (Exhibit 69, p. 1). Likewise, George Fox policy provides, "Retaliation is prohibited by federal law and *institutional policy*." (*Id.,* p. 2) (emphasis added).

After Ms. Jones submitted her discrimination complaint, Rick Muthia, Director of Learning Support Services, recommended that Dr. Dempsey notify Ms. Jones that while students were encouraged to work through the internal process, she had the right to file an external complaint of

PAGE 6 - PLAINTIFF'S TRIAL MEMORANDUM

disability discrimination with the U.S. Department of Education's Office for Civil Rights. During the February 6, 2018 faculty meeting, Dr. Dempsey relayed that Rick Muthia indicated that Ms. Jones' complaint "isn't necessarily out of line."

George Fox was aware of its obligations to not discriminate against students on the basis of disabilities or protected activities, yet the evidence will show that George Fox intentionally engaged in discrimination towards Ms. Jones or was deliberately indifferent to the risk of discrimination. If Ms. Jones establishes intentional discrimination or deliberate indifference to a known risk, she is entitled to compensatory damages as well as her attorneys fees and costs.

### B.     Breach of the Duty of Good Faith and Fair Dealing

In Oregon, a student and private university may have a contractual relationship based on the terms contained in publications that the university provides to the student. *Dauven v. George Fox University*, 2010 WL 6089077, *16 (D.Or. Dec. 3, 2010). Every contract generally has an obligation of good faith in its performance and enforcement under the common law. *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445, 240 P.3d 94 (2010). "The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties 'will refrain from any act that would have the effect destroying or injuring the right of the other party to receive the fruits of the contract.' " *Id*. (quoting *Iron Horse Eng. v. Nw. Rubber*, 193 Or. App. 402, 421, 89 P.3d 1249 (2004)).

A party may violate the duty of good faith and fair dealing without also breaching the express provisions of the contract and a claim for breach of the duty may be maintained independent of the express terms of the contract. *Id.* The duty may not, however, " 'contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract.' " *Id.* (quoting *Zygar v. Johnson*, 169 Or. App. 638, 645, 10 P.3d 326 (2000), *rev. den.*, 331 Or. 584, 19 P.3d 356 (2001)). The duty "does not operate in a vacuum[,]" rather it "focuses on the `agreed common purpose' and the justified expectations' of the parties, both of which are intimately related to the parties' manifestation of their purposes and

PAGE 7 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

expectations in the express provisions of the contract." *Klamath Off-Project Water Users,* 237 Or. App. at 445, (citing *OUS v. OPEU,* 185 Or App 506, 515-16, 60 P3d 567 (2002)).

Ms. Jones asserts that George Fox University breached the duty of good faith and fair dealing contained in their contractual agreement, as detailed in university publications and materials including the Handbook, Catalog, and student life/DPS policies, by denying her a fair and equal opportunity to obtain her clinical mental health counseling degree. Ms. Jones alleges that George Fox University breached the duty of good faith and fair dealing by engaging in one or more of the following actions:

a. Failing to follow the GFU Counseling Program Student Agreement, GFU's Graduate Catalog, Graduate Student Handbook, and bulletins, circulars, regulations and policies;

b. By failing to provide Ms. Jones with ongoing feedback throughout the clinical program regarding her behavior and professional dispositions;

c. By failing to advise Ms. Jones if difficulties or concerns were observed which could result in delaying her program;

d. By failing to provide Ms. Jones with an opportunity to demonstrate improvement in any areas of alleged difficulties before it halted her progress toward internship;

e. By promoting Ms. Jones' self-disclosures regarding her mental health and GEI history, then using her disclosures as a basis for asserting that she was not demonstrating professional dispositions necessary to advance to internship;

f. By failing to provide timely feedback to Ms. Jones following the Internship Fair regarding a concern about her professional behavior, then using that concern as a basis for later asserting that she was not demonstrating professional dispositions necessary to advance to internship;

g. By concluding that Ms. Jones was not ready for internship after she filed her complaint of discrimination;

PAGE 8 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

h.  By failing to tell Ms. Jones that she was not allowed to advance to internship until February 23, 2018, so that Ms. Jones continued to interview for internships when GFU knew it would not allow her to advance to internship;

i.  By giving Ms. Jones a Student Progress Review on February 23, 2018, which for the first time offered negative feedback regarding Ms. Jones' professionalism and behaviors;

j.  By not allowing Ms. Jones to advance to internship and have the opportunity to demonstrate her professional behaviors;

k.  By not using the Student Progress Review process to assist Ms. Jones in becoming ready for internship;

l.  By preventing Ms. Jones from participating in the Polk County internship which she had been offered and accepted in the Spring of 2018;

m.  By requiring Ms. Jones to complete a Remediation Plan to stay in the clinical degree program, when the Plan did not provide objective measurable outcomes to determine whether or not Ms. Jones was successfully completing the requirements of the Plan;

n  By requiring Ms. Jones to pay for a mandatory psychological assessment to determine whether she was impaired and requiring her to submit to additional conditions to advance to internship that were not placed on other students;

o.  By referring to Ms. Jones as combative, aggressive, impaired, and questioning her abilities to function in a legally and ethically responsible manner, and questioning her psychiatric stability because she filed a grievance; or

p.  By withholding from Ms. Jones the information that GFU may have been willing to pay for the required psychological assessment and testing, when it knew that Ms. Jones opted for the non-clinical degree because she could not afford to pay for the assessment and testing herself; or

PAGE 9 - PLAINTIFF'S TRIAL MEMORANDUM

Law Offices of Judy Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 228-5027
Fax (503) 241-2249

  q. By taking the above actions because Ms. Jones filed a grievance.

  Ms. Jones does not dispute that when appropriate, George Fox was entitled to conduct a Student Progress Review on her and to offer a Remediation Plan. Nevertheless, it was not entitled to do so in a discriminatory manner that denied Ms. Jones a fair opportunity to obtain her clinical degree.

  As a result of George Fox University's breach of the duty of good faith and fair dealing, Ms. Jones is entitled to seek compensatory damages.  George Fox asserts that Ms. Jones is not entitled to emotional distress damages because her good faith and fair dealing claim sounds in contract, and in general, emotional distress damages are not available for breach of contract claims, and the only exception is when the breach causes actual physical injury[2].

  The damages available for breach of the covenant of good faith and fair dealing depends upon whether the action is brought on the contract or an action for tort.  Where one party to a contract seeks to sue the other in tort, "`[t]he dispositive issue is whether [the defendant] was subject to a standard of care independent of the contract.'"  The plaintiff is required to present evidence that a special relationship existed between the parties that was independent of the duties under the agreement.  *Bennet v. Farmers Ins. Co. of Oregon*, 150 Or.App. 63, 79, 945 P.2d 595 (1997), quoting *Uptown Heights Associates v. Seafirst Corp.*, 320 Or. 638, 648, 891 P.2d 639 (1995).

  In the present case, the court granted summary judgment to George Fox on Ms. Jones' breach of contract claim after finding "Defendant's graduate catalog and student life policies, which Plaintiff relies on for her breach of contract claim, expressly disclaim the non-discrimination and retaliation provision Plaintiff alleges Defendant breached."  (ECF 37, at 2). Because the contract between George Fox and Ms. Jones does not include a non-discrimination and non-retaliation provision, her claim that it breached its duty of good faith and fair dealing in the manner and means

---

[2]See Defendant's Motion in Limine No. 11.  Plaintiff objects to and will file a response to this motion separately.

PAGE 10 - PLAINTIFF'S TRIAL MEMORANDUM

by which it interfered with her continuation in the program, does not arise in contract. Rather, it arises out of a standard of care independent of the contract.

George Fox was subject to standards independent of its contractual agreement with Ms. Jones, including the nondiscrimination policies (Exhibit 69), the CACREP standards (Exhibit 77), and the ACA ethical standards (Exhibit 78), which identify how George Fox was to carry out its counselor educators' responsibilities. For example, the ACA standards require "Counselor educators provide students with ongoing feedback regarding their performance throughout the training program." (Exhibit 78, p. 15 (F.9.a Evaluation of Students)). The ACA standards also provide, "Counselors do not condone or engage in discrimination against *** students *** based on age, culture, disability *** or any basis proscribed by law. (*Id.*, p. 9 (C.5. Nondiscrimination). George Fox's own policies prohibit discrimination and retaliation. (See, Exhibit 69).

The counselor-educator and student relationship between Ms. Jones and George Fox is controlled by standards that are independent of their contractual agreement. Therefore, Ms. Jones is entitled to seek emotional distress damages for the breach of the duty of good faith and fair dealing, which sounds in tort, rather than contract. Ms. Jones has asserted that as a result of George Fox's breach of the duty of good faith and fair dealing, she has suffered damages emotional distress damages. (See Proposed Pretrial Order, at 22).

In addition, the economic loss rule, which provides that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property, does not apply to Ms. Jones' good faith and fair dealing claim. *See Hale v. Groce*, 304 Or. 281, 284, 744 P.2d 1289 (1987) (a tort claim for purely economic harm cannot succeed unless the plaintiff can point to a statute or a "special relationship" giving rise to a heightened duty of care, above and beyond the generic duty to avoid unreasonable risk of foreseeable harm.). Ms. Jones does not assert a claim for negligence, and does not seek only economic damages.

*Austin v. University of Oregon*, 205 F. Supp.3d 1214 (D.Or. 2016), in which Judge McShane that no special relationship existed between students and the University of Oregon, does not dictate

PAGE 11 - PLAINTIFF'S TRIAL MEMORANDUM

a different conclusion.  In *Austin*, three university athletes who were suspended and lost scholarships after the investigation into allegations of sexual assault of a female student, sued the university asserting violations of their due process rights, gender discrimination in violation of Title IX, and various state torts including negligence, intentional infliction of emotional distress, intentional interference with economic relations, and breach of contract.  In ruling on the defendants' motion to dismiss the negligence claim, the court found that the plaintiffs failed to allege a special relationship with the university, and therefore their negligence claim, which pled only economic damages, was dismissed without prejudice.  *Id*. at 1229.  *Austin* did not involve a relationship in which the university owed duties were that were independent of the college-student contract.  Therefore, it is not applicable to this case.

## IV.  OTHER LEGAL ISSUES

### A.  Gatekeeping and Academic Deference

The parties agree that as a counselor education program, George Fox University has a duty to act as a gatekeeper for the counseling profession; however, gatekeeping cannot be a disguise for discrimination. Each party has retained experts[3] to educate the jury about George Fox University's gatekeeping responsibility under the CACREP and ethical standards of the American Counseling Association.  The jury will decide whether George Fox exercised its gatekeeping responsibility in an appropriate manner when it halted Ms. Jones' advancement to internship, or whether it unlawfully retaliated against her due to her filing a discrimination complaint.

George Fox is expected to assert, and is requesting the jury be instructed[4] that its gatekeeping decision is entitled to deference under *Wong v. Regents of Univ. of California*, 192 F3d 807, 822-23 (9th Cir 1999), as amended (Nov. 19, 1999)[5].  In *Wong,* the Court of Appeals

---

[3]Ms. Jones seeks to exclude testimony of George Fox's experts through a separate motion.

[4]See Defendant's Requested Instruction No. 1, to which plaintiff objects.

[5]George Fox has proposed a jury instruction on "University Discretion" to which Ms. Jones objects. The instruction provides in part, "In deciding Ms. Jones's discrimination and

PAGE 12 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

considered the degree of deference (if any) with which it should treat an educational institution's decisions involving its academic standards and curriculum. The Court cited to the U.S. Supreme Court's decision in *Regents of the Univ. of Michigan v. Ewing*, which stated that judges "should show great respect for [a] faculty's professional judgment" when reviewing "the substance of a genuinely academic decision." 192 F.3d at 817, citing *Ewing*, 474 U.S. 214, 225 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). In *Wong*, the Ninth Circuit was clear that such deference is not absolute, and the court must ensure that "educational institutions are not 'disguis[ing] truly discriminatory requirements' as academic decisions." *Id.*, citing *Zukle v. Regents of University of California*, 166 F.3d 1041, 1048-49 (9th Cir.1999).

The academic deference standard generally arises in cases addressing whether a student with a disability is "otherwise qualified" and whether a requested accommodation would have fundamentally altered a standard or requirement of a program, like *Wong* and *Zukle*. In *Wong*, the court stated that it would defer to an institution's academic decision only after it determined that the school fulfilled its real obligation "'to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'" *Id*. at 817, citing *Zukle*, 166 F.3d at 1048.

In *Wong,* the court concluded it would not defer to the institution's decision, stating,

> Far from demonstrating a conscientious effort to consider all relevant factors in deciding that Wong could not meet the school's academic requirements even with reasonable accommodation, the record contains evidence that the University eschewed its obligation to consider possible modifications it could make (or could have made) in the program to accommodation Wong and the past and potential effects of such accommodations (and lack thereof) on Wong's performance.

192 F.3d at 823. The academic institution bears the burden of presenting a factual record that

---

retaliation claims against George Fox University, you may not second-guess George Fox University's decisions or substitute your judgment for George Fox University's decisions. As an educational institution of higher education, George fox University is entitled to deference in its decision making in connection with academic standards and curriculum." Ms. Jones will file an objection to this instruction.

PAGE 13 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

shows it conscientiously considered all pertinent and appropriate information in making its decision. *Id. Wong* involved a medical student who requested specific accommodations he needed in order to meet the academic requirements of the program.

In the present case, Ms. Jones is not asserting that she was denied a reasonable accommodation which would have made her "otherwise qualified" for the CMHC program or the internship. In addition, George Fox's decision to deny her advancement to internship, was not purely an academic one like those in *Zukle* and *Wong;* Ms. Jones did not fail a class or fail to demonstrate improvement in an area of deficiency after being notified of a deficiency. Therefore, George Fox is not entitled to any deference for its decision that Ms. Jones was not ready for internship due to professional or behavioral concerns. The jury should not be instructed to accord George Fox deference; rather, the jury should be instructed about George Fox's gatekeeping responsibility under the applicable standards. It should be for the jury to decide whether George Fox was exercising its gatekeeping responsibility consistent with the applicable standards or whether it unlawfully retaliated and discriminated against Ms. Jones.

The evidence at trial, including direct evidence demonstrating discriminatory intent, will show that George Fox is not entitled to deference because it did not conscientiously consider all options in relation to Ms. Jones' progress toward internship. Rather, the evidence is uncontroverted that George Fox concluded that Ms. Jones was not ready for internship three days after Ms. Jones submitted her formal discrimination complaint and with knowledge of that complaint. Ms. Jones was not offered an opportunity to demonstrate her readiness for internship through mock clinicals or close supervision. Instead, George Fox concluded that because she filed a discrimination complaint, she was not ready for internship.

If the court does instruct the jury about the university's deference, Ms. Jones proposes additional special jury instructions to explain the limits on any such deference, including that it should only be accorded after the university has established a factual basis to support such deference. In the present case, there is no evidence that George Fox "conscientiously carried out

PAGE 14 - PLAINTIFF'S TRIAL MEMORANDUM

its statutory obligation" to not discriminate or retaliate against a student making a complaint.

### B. Ms. Jones' Economic Damages

Ms. Jones enrolled in the George Fox program to obtain a master's degree in clinical and mental health counseling. Due to intentional discrimination and retaliation by George Fox, she was unable to remain in the clinical program and instead received a master's in Social and Behavioral Studies. Because she did not obtain her clinical degree, Ms. Jones is unable to pursue licensure as a counselor and has limited employment opportunities. Vocational rehabilitation expert Lisa Broten will testify to Ms. Jones' employment prospects and employability with her non-clinical degree. Ms. Broten will further testify that Ms. Jones does not qualify for higher-paying mental health counselor jobs because she lacks the clinical component of her degree and/or is not eligible to be licensed as a professional counselor.

In *Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990), the Ninth Circuit recognized that "money damages" are available for violations of the Rehabilitation Act, 29 U.S.C. § 794, since "plaintiffs suing under section 504 of the rehabilitation act 'may pursue the full panoply of remedies, including equitable relief and monetary damages.' " (quoting *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 (9th Cir. 1987)).

#### 1. Loss of earning capacity

Ms. Jones seeks economic damages for lost earning capacity and future earning capacity of a licensed counselor as compared to that of a peer support specialist. Ms. Jones is offering expert testimony regarding her earning capacity with her current master's degree, as compared to that of a licensed counselor.

Ms. Jones is limiting her recovery of economic damages for lost earning capacity from mid-2020 through 2031, when she anticipates retiring at age 70. Although Ms. Jones graduated in May of 2019, she was unable to immediately enter the work force because on July 1, 2019, her daughter unexpectedly passed away. Ms. Jones became symptomatic and was unable to work or even to look for work during the period of a year following her daughter's death in which she

PAGE 15 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

suffered intense grief. Ms. Jones is seeking damages for her loss of earning capacity commencing in mid-2020 when she was ready to enter the work force. Ms. Jones will testify that she foresees working until age 70.

Ms. Jones receives social security disability benefits for her disabilities of Post Traumatic Stress Disorder and anxiety, which are not related to George Fox University. Ms. Jones is eligible for Social Security's Ticket to Work program, which supports career development for social security disability beneficiaries age 18 through 64 who want to work[6]. "The Social Security Act and amendments established a complex schema of statutory provisions and regulations that were designed both to provide protection for individuals who can no longer work because of disability and to encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1458 (9th Cir 1995). The Social Security Act "clearly permits individuals to receive benefits while engaged in a period of paid 'trial work.'" *E.E.O.C. v. Timeless Investments, Inc.,* 734 F. Supp. 2d 1035, 1060 (ED Cal 2010) (internal citatinos omitted). "For example, the vocational rehabilitation sections of the Act are expressly designed to return formerly disabled beneficiaries to the workforce. See 42 U.S.C. § 422 (rehabilitation and trial work provisions); Arthur Abraham & David L. Kopelman, Federal Social Security 103 (1979) ("Congress has expressly stated that its policy is the rehabilitation of the maximum number of disabled applicants for productive activity."). *Flaten*, 44 F.3d at 1458.

Had Ms. Jones been permitted by George Fox to advance to her Polk County internship in 2018, she would have worked approximately 16 hours per week for approximately one year during her academic internship. After graduation, Ms. Jones would have sought a paid clinical internship position. Her post-graduate internship would have served as the trial work period under the Ticket to Work Program, in which Ms. Jones would reintegrate into the workforce on a part-time basis and then transition to full time work.

---

[6]See, https://www.ssa.gov/work/overview.html?tl=0%2C1.; 42 U.S.C. § 422.

PAGE 16 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

Because Ms. Jones was unable to advance to internship and unable to pay for the psychological testing required by the Remediation Plan, she opted for the non-clinical degree so she could graduate on time in May of 2019 without incurring further education debt. Ms. Jones asserts that but-for George Fox's unlawful discrimination and retaliation, she would have completed the internship, graduated with a clinical degree, and been prepared to enter the work force under the Ticket to Work program.

### 2. Ms. Jones' Social Security Disability Benefits Should Not Offset an Award of Economic Damages

Ms. Jones social security disability benefits should not offset an award of economic damages for lost earning capacity because they are benefits from a collateral source.

Under the collateral source rule, "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." *McLean v. Runyon*, 222 F3d 1150, 1155–56 (9th Cir 2000), citing 1 dan B. Dobbs, *Law Of Remedies* § 3.8(1) at 372–73 (2d ed.1993); *accord Kauffman v. Sidereal Corp.*, 695 F.2d 343, 346–47 (9th Cir.1982). The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff and that the defendant should not profit from benefits that the plaintiff has paid for himself. *Id.,* citing *Siverson v. United States*, 710 F.2d 557, 560 (9th Cir.1983) (finding that the purpose of collateral source doctrine is to prevent the defendant from receiving a windfall, irrespective of whether application of the doctrine results in a double recovery for the plaintiff).

In *Eichel v. New York Central R. Co.*, the Supreme Court recognized that benefits received under "a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer." 375 U.S. 253, 255 (1963), citing *New York, N.H. & H.R. Co. v. Leary*, 204 F.2d 461, 468 (1st Cir.), *cert. denied*, 346 U.S. 856 (1953). Similar principles apply in this case. Ms. Jones receives social security disability benefits to which she contributed during her prior careers and which are from a source wholly collateral to George Fox University. Therefore, they should not offset any award of

PAGE 17 - PLAINTIFF'S TRIAL MEMORANDUM

economic damages for her lost earning capacity.

### 3. Tuition Debt

Ms. Jones asserts that as a result of intentional discrimination, she was deprived of the benefit of her enrollment in the Clinical Mental Health Counseling program for which she incurred tuition and student loan debt. The report of George Fox's expert Katharyn Thompson[7] cites to the George Fox website for the cost for the entire MA Degree in Clinical Mental Health Counseling as $45,360. Yet, as recognized by George Fox, students attending graduate programs incur expenses for more than simply tuition for classes, including books, transportation, living expenses, personal expenses, and loan fees. (See, Trial Exhibit 72).

Ms. Jones will testify about the student loans she obtained to attend the CMHC graduate program to pay for tuition and other expenses associated with attending graduate school. Ms. Jones' student loan disbursements, available on the George Fox website, confirm that Ms. Jones incurred student loan debt from 2015 through 2019 in the amount of $89,053. Ms. Jones' Complaint requests economic damages for student loan debt in the amount of $70,623; however, the evidence shows that Ms. Jones' actual student loan debt for tuition and other expenses is higher. Ms. Jones requests to amend her demand for tuition debt damages to conform to the evidence.

George Fox may assert that Ms. Jones is not entitled to seek damages for her tuition because she obtained a master's degree. Yet, Ms. Jones would not have enrolled in the graduate program to obtain a non-clinical master's degree in Social and Behavioral Studies. Her sole reason to attend graduate school was to obtain her clinical master's degree to pursue her clinical license. Due to George Fox's conduct, she was unable to attain that goal. As a result, she incurred debt for tuition and other expenses that she would not otherwise have incurred.

The jury should decide whether the debt Ms. Jones incurred should be paid as

---

[7]Plaintiff seeks an order striking Ms. Thompson's rebuttal expert report as improper rebuttal, since it addresses Ms. Jones' claim for damages, which was not only foreseeable, but anticipated by the claims and defenses.

PAGE 18 - PLAINTIFF'S TRIAL MEMORANDUM

compensatory damages. *See, Featherstone v. Pac. Nw. Univ. of Health Scis.*, 1:14-CV-03084-SMJ, 2015 WL 13729158, at *3 (ED Wash Oct 6, 2015) ("A reasonable factfinder could conclude that, based on DVR's offer and Featherstone's acceptance of tuition assistance for the 2015–2016 academic year, he could have obtained the same assistance last year. Thus, the amended allegations, taken as true, state a plausible claim for tuition reimbursement. For that reason, the Court finds that the amendment would not be futile."); *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, 114 F Supp 3d 1260, 1289–90 (ND Ga 2015) (Plaintiff's allegations that he is entitled to a refund of his tuition and fees for enrollment and housing for all periods during which he alleges he was subject to discrimination because he was not able to enjoy the services for which he paid on equal footing with his non-disabled counterparts, is feasible and for the jury to determine.)

In June of 2019, Ms. Jones filled out an application for a discharge of her student loan debt under the federal Student Aid Bill of Rights and the Higher Education Act, 20 U.S.C. § 1001 et. seq., as she did not know how she would repay the loans with her non-clinical degree. Ms. Jones signed, but did not submit her application in June. In July of 2019, Ms. Jones became symptomatic due to her daughter's unexpected death, after which, Dr. Mohandessi, her treating psychiatrist, determine she was unable to work due to her disabilities. (See Trial Exhibit 82, p. 2). Ms. Jones' application for tuition discharge was approved on October 15, 2019. Under the program, Ms. Jones became subject to a three-year post-discharge monitoring program in which she is required to repay her loans if she has annual employment earnings that exceed the Poverty Guideline amount for a family of two or $17,420. (See Exhibit 76, pp. 2-3). Each year, Ms. Jones must submit information regarding her employment earnings.

In July of 2020, Ms. Jones began working part-time as an On-Call Peer Recovery Coach for Telecare Corporation. Ms. Jones anticipates working part-time for approximately one year to reintegrate into the workforce. She does not expect to earn more than $17,420 in her first year of employment.

Ms. Jones plans to work full time in or around August 2022. Under the three-year

PAGE 19 - PLAINTIFF'S TRIAL MEMORANDUM

monitoring program, she will be required to repay her student loan debt if she earns more than $17,420 before the discharge date of October 15, 2022. Ms. Jones anticipates that she will earn more than that amount prior to her discharge date, and therefore will be required to repay the tuition debt in full.

### 4. George Fox's Affirmative Defense of Mitigation

George Fox did not raise the affirmative defense of mitigation of damages in the Pretrial Order, therefore, it has been waived. *Southern Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) ). The Ninth Circuit has "consistently held that issues not preserved in the pretrial order" are "eliminated from the action." See Plaintiff's Motion in Limine No. 1.

While George Fox did raise the issue of its gatekeeping responsibility in the Pretrial Order, it did not assert that its decisions were entitled to academic deference. In response to the Third Claim for Relief, the breach of the duty of good faith and fair dealing, George Fox contends "GFU is entitled and granted discretion to take the actions it did with Ms. Jones, including implementing a SPR and offering a Remediation Plan." GFU's discretion was raised in direct response to Ms. Jones' assertion that it acted in bad faith by the means and manner in which it issued the SPR and Remediation Plan.

Academic deference is different than discretion. Therefore, because the defense of academic deference was not raised in the Pretrial Order, it has also been waived. *Id.*

DATED this 13th day of September, 2021,

LAW OFFICES OF JUDY SNYDER

    s/ Holly Lloyd
JUDY DANELLE SNYDER, OSB No. 732834
HOLLY LLOYD, OSB No. 942979
Telephone: (503) 228–5027
Facsimile: (503) 241-2249
Email: judy@jdsnyder.com
Email: holly@jdsnyder.com
Of Attorneys for Plaintiff

PAGE 20 - PLAINTIFF'S TRIAL MEMORANDUM

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249